11 P.3d 1094

STATE of Hawai'i, Plaintiff–Appellant,

v.

Jay Radford MARCH, Defendant–
Appellee.

No. 22938.

Supreme Court of Hawai'i.

Oct. 30, 2000.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

Theodore Y.H. Chinn, Deputy Public Defender, on the briefs, for defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by MOON, C.J.

On October 23, 1998, while serving a five-year term of probation in Criminal Number [Cr. No.] 94–2844, Defendant-appellee Jay Radford March (Defendant) was arrested and incarcerated for two unrelated drug offenses under Cr. No. 98–2290. On August 4, 1999 Defendant was convicted of the offenses charged in Cr. No. 98–2290. As a result of his conviction, Defendant's probation in Cr. No. 94–2844 was revoked, and he was resentenced to five years of incarceration, "with credit for time served *nunc pro tunc* to October 26, 1998." The prosecution appeals from the order of resentencing, pursuant to Hawai‘i Revised Statutes (HRS) § 641–13(6), contending that the trial court erred in giving Defendant credit for time served in a separate criminal matter. For the reasons discussed below, we agree with the prosecution, vacate the circuit court's order, and remand for resentencing consistent with this opinion.

## I. BACKGROUND

On December 28, 1994, Defendant was charged in Cr. No. 94–2844 with one count of Criminal Property Damage in the Second Degree and one count of Terroristic Threat-

ening in the First Degree. On April 10, 1995, Defendant pled guilty to both charges. On August 8, 1995, Defendant was sentenced to a five year term of probation on each count, subject to a special condition of one year of incarceration, with credit for time served and to run concurrently with each other.

On October 23, 1998, while on probation, Defendant was arrested and incarcerated upon suspicion of committing the offenses of Promoting a Dangerous Drug and Use of Drug Paraphernalia in Cr. No. 98–2290. While awaiting his trial on the charges for the 1998 offenses, Defendant was incarcerated for approximately 333 days, during which time his probation was not revoked.

On August 4, 1999, following a jury trial, Defendant was found guilty in Cr. No. 98–2290.

On August 30, 1999, prior to the sentencing hearing in Cr. No. 98–2290, the prosecution filed a motion for revocation of probation and resentencing in Cr. No. 94–2844 based upon Defendant's conviction in Cr. No. 98–2290.

The circuit court held a combined hearing on October 14, 1999 for sentencing in Cr. No. 98–2290 and the motion for revocation and resentencing in Cr. No. 94–2844 At the hearing, defense counsel argued:

[DEFENSE COUNSEL]: ... [W]e would ... ask the [c]ourt on the probation revocation in Criminal No. 94–2844 *to have the revocation dated nunc pro tunc to the date that [Defendant] was incarcerated on this case in 98–2290.*

We don't believe that the ends of justice require that he serve the 94–2844 starting from now. It wouldn't be any different for purposes of punishment and rehabilitation if he started the 94–2844 together with this case, the 98–2290. That would be our arguments, Your Honor.

[THE COURT]: Nunc pro tunc to what date?

[DEFENSE COUNSEL]: I believe the nunc—October 26, 1998.[1]

---

1. Throughout the transcript of proceedings, the record on appeal, and the briefs, October 23,

1998 is the date referred to as the arrest date. Although the record of the 1998 offenses was not

[THE COURT]: Okay. There's approximately, if I'm not—the last sentencing hearing, there were approximately 330—we continued that. There were approximately 333 days credited at that time. There should be more now. Has there been an update on that?

[CLERK]: No.

[THE COURT]: Okay. All right. Let me hear from the prosecutor.

[DEPUTY PROSECUTOR]: Your Honor, well, just addressing that last point, as a result of his conviction in 98–2290, probation revocation is automatic in 94–2844. There's no discretion but to revoke his probation.

I believe what [defense counsel] was trying to argue was that the [c]ourt should begin—you know, because the defendant's going to get prison in the 98 number, that we should begin the incarceration time from the October '98 date.

*But of course, that would be an illegal sentence because the defendant cannot get credit for time served on the 94–2844 number from October of '98, because he was not being held in custody on that 94 criminal number from October of '98. He was only being held during this time period under the 98–2290 criminal number. So for him to get credit for time served on the 94 number for one year would be an illegal sentence.*

There was nothing holding him in custody on that 94 criminal number because there was never a probation revocation filed by the probation department, there was no bench warrant that went out under that 94 number which would have held him under that 94 number. The motion for revocation that we filed was a mere form motion because, under the statute, the revocation is mandatory. But at no time was he being held on that 94 number.

. . . .

But nevertheless, there's no way that the defendant can get credit for time served

under that 94 number from October [1998] because that's going to be an illegal sentence.

. . . .

(Emphases added.) In response, defense counsel continued:

[DEFENSE COUNSEL]: Your Honor, we don't believe its an illegal sentence. *I think the court can make the revocation nunc pro tunc back to October 26, 1998.* I think that by having the [prosecution] not file the revocation until the end of the case would violate [Defendant's] right to exercise his right to trial. Because by exercising his right to trial, the [prosecution] doesn't file the motion.

For example, if he had pled guilty and to the—got the five years with a reduced mandatory minimum, revocation would have occurred back in October or back when we would make the decision to plead guilty and the time would start because the revocation would have been filed. By holding off on the revocation, which is their right, and because they don't have grounds to do so—

[THE COURT]: Let me ask a question. Do either of you have authority one way or the other on whether or not it would be an illegal sentence to make it nunc pro tunc?

[DEFENSE COUNSEL]: No, your Honor, I don't have any authority whether it's illegal. I have had cases where the judge does this though on other occasions.

[DEPUTY PROSECUTOR]: Your Honor, I can't think of a case off the top of my head. But the plain language of the statute—

[THE COURT]: I know you're referring to the statute. [Defense Counsel], continue please.

[DEFENSE COUNSEL]: It is our position that the Court can do this. And it is also our position that it does violate [Defendant's] right to exercise his right to trial because of the way the motion for

made part of the record on appeal, the prosecution, in its opening brief, explains that there are two Certificates of Detention, one of which provides that Defendant was incarcerated for 4 days (Chief of Police, HPD) and the second of which provides that Defendant was incarcerated for 329 days (Director, Department of Corrections) between October 26, 1998 to September 20, 1999. In light of our holding, this court need not resolve the discrepancy in dates.

revocation is filed. And that's our position.

. . . .

[DEPUTY PROSECUTOR]: Well, you know, if the only basis for the revocation is the subsequent felony conviction, it's kind of hard to prematurely file the motion for revocation. . . . So the only legal basis we have is this subsequent conviction.. So there's no violation of the defendant's rights. He's not entitled to credit.

After hearing arguments, the circuit court granted the motion for revocation in Cr. No. 94–2844 stating:

The court finds that the defendant is not in compliance with the terms and conditions of the previous matter under Criminal No. 94–2844.

Accordingly, motion for revocation of probation is granted based upon the fact that the defendant has inexcusably failed to comply with substantive terms and conditions of that probation, being that he has now been convicted under 98–2290.

. . . .

Now, so as far as the credit is concerned in Criminal No. 98–2290, defendant will be given credit for all time served to date in that case. And I am going to order over objection by the State that the time in the . . . 94–2284 be nunc pro tunc to October 26, 1998. . . .

In its written order of resentencing and revocation of probation, the circuit court sentenced Defendant in Cr. No. 94–2284 as follows:

Defendant is hereby resentenced to terms of incarceration of five (5) years each in counts I and II, to run concurrently with each other and with Cr. No. 98–2290, with credit for time served nunc pro tunc to October 26, 1998.

The prosecution's timely appeal followed.

## II. *STANDARDS OF REVIEW*

■ "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *State v. Griffin*, 83 Hawai'i 105, 107, 924 P.2d 1211, 1213 (1996) (citations omitted). Presentence incarceration credit is governed by statute. *See* HRS § 706–671 (1993); *see also State v. Yamasaki*, 91 Hawai'i 163, 165, 981 P.2d 720, 722 (App.1999).

[T]he interpretation of a statute is a question of law reviewable de novo. Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. . . . This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning." HRS § 1–15(2) (1993).

*State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (internal citations and ellipses omitted) (ellipsis added).

■ "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *State v. Friedman*, 93 Hawai'i 63, 996 P.2d 268 (2000) (citations omitted).

## III. *DISCUSSION*

In this case, the circuit court ordered that Defendant's five-year term of incarceration in Cr. No. 94–2844 be "credit[ed] for time served *nunc pro tunc* to October 26, 1998." On appeal, the parties do not dispute that Defendant's incarceration from October 26, 1998 was solely for the 1998 offenses. Focusing on the "nunc pro tunc" language, the prosecution argues that the circuit court's order illegally credits Defendant in Cr. No. 94–2844 for the time he was incarcerated while awaiting trial in Cr. No. 98–2290. Defendant, on the other hand, argues that the circuit court has the inherent authority to resentence Defendant "nunc pro tunc" and,

therefore, has the discretion to credit Defendant in Cr. No. 94–2844 with time served from October 26, 1998. The phrase "nunc pro tunc" is "descriptive of the inherent power of a court to make its records speak the truth, i.e., to record that which ... *actually* [occurred]," but was erroneously omitted or recorded. *Simmons v. Atlantic Coast Line. R.R. Co.*, 235 F.Supp. 325, 330 (E.D.S.C.1964) (emphasis added). It is often applied to acts allowed to be done after the time when they should be done, with a retroactive effect. *See* Black's Law Dictionary 1069 (6th ed.1990). It is unclear from the circuit court's use of the phrase "nunc pro tunc" whether the court was crediting Defendant with time served in Cr. No. 98–2290, as argued by the prosecution, or whether the court was attempting to treat Defendant as though he had been sentenced on October 26, 1998, as the phrase "nunc pro tunc" suggests. Under either scenario, the sentence is illegal.

### A. Credit for time served

The statute governing presentence incarceration credit, HRS § 706–671(1) (1993), provides in relevant part:

> When a defendant who is sentenced to imprisonment has previously been detained in any State or local correctional or other institution following the defendant's arrest *for the crime for which sentence is imposed,* such period of detention following the defendant's arrest *shall* be deducted from the minimum and maximum terms of such sentence.

(Emphasis added.) Although the statute mandates that the pre-conviction detention period "shall" be deducted from the period of incarceration of *that* offense, it is silent as to the propriety of obtaining credit for time served in connection with an unrelated criminal offense. However, this court has held that a defendant is not entitled to such credit. *See State v. Miller,* 79 Hawai'i 194, 197, 900 P.2d 770, 773 (1995) (holding that defendant was properly denied credit for time served after his arrest for a subsequent offense that was unrelated to the one for which he was being sentenced); *State v. Kami,* 71 Haw. 612, 615–16, 801 P.2d 1206, 1208 (1990) (holding that probationer incarcerated for additional unrelated felonies does not receive credit for time served for the unrelated felonies upon subsequent revocation of probation and resentencing); *State v. Yamasaki,* 91 Hawai'i 163, 164, 981 P.2d 720, 721 (App. 1999) (concluding that "HRS § 706–671(1) (1993) does not afford a defendant the right to credit against the sentence imposed against him or her for a criminal conviction the time that the defendant spent in prison, post-arrest and pre-sentence, as a consequence of a different criminal charge and/or conviction."), *cert. denied,* 91 Hawai'i 163, 981 P.2d 720 (1999).

Defendant argues that *Kami* and *Miller* are distinguishable because in both cases, "the trial judge *denied* the defendant credit for time served." (Emphasis added.) Defendant contends that, because the circuit court, in his case, *granted* credit for time served, "deference should be given due to the discretionary authority of the sentencing court." We disagree.

▪ Although the sentencing court is given broad discretion in sentencing defendants, *see State v. Vinge,* 81 Hawai'i 309, 316, 916 P.2d 1210, 1217 (1996), the sentence imposed must be authorized by statute. *See State v. Kahalewai,* 71 Haw. 624, 626, 801 P.2d 558, 560 (1990) (clarifying that an illegal sentence is one that the court is not authorized to impose). And, HRS § 706–600 (1993) expressly precludes the imposition of any sentence not authorized by chapter 706. *See* HRS § 706–600 (providing that "[n]o sentence shall be imposed otherwise [sic] than in accordance with this chapter"). HRS § 706–671 not only authorizes, but also mandates, that the trial court credit Defendant for any time served *in connection with* the same offense. *See State v. Mason,* 79 Hawai'i 175, 183, 900 P.2d 172, 180 (App.1995) ("[T]he evident purpose of HRS § 706–671(1) is to credit a defendant for the time he or she is confined prior to sentencing *in connection with* the defendant's ultimate conviction") (emphases added), *cert. denied,* 79 Hawai'i 175, 900 P.2d 172 (1995); *see also* Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1037; Sen. Conf. Comm. Rep. No. 1–72, in 1972 Senate Journal, at 736. HRS § 706–671, however, does not authorize courts to

credit Defendant with time served for another offense. Based on the plain language of the statute, the legislature clearly intended the credit to apply only to the sentence for the offense for which the presentence time was served. Any other result would allow credit for time served in connection with wholly unrelated offenses. Under the criminal justice system, once convicted, the defendant must serve the sentence imposed for the offense committed. Accordingly, we hold that a sentence that credits Defendant with the time served for an unrelated offense is illegal because the sentencing court is not authorized by chapter 706 to grant such a credit.

As stated previously, Defendant's incarceration from October 26, 1998 was solely for the 1998 offenses. Thus, if the circuit court intended to credit Defendant in Cr. No. 94–2844 with time served while he was incarcerated solely for Cr. No. 98–2290, then the sentence imposed is illegal. We need not determine whether the circuit court so intended, however, because the "alternative" reading of the sentencing order is also illegal.

B. *Retroactive Sentence*

As stated previously, the circuit court's use of the phrase "nunc pro tunc" may also indicate that the circuit court intended to credit Defendant as though he had been sentenced on October 26, 1998. We need not determine whether the circuit court was authorized to impose such a sentence because, even if it were authorized, Defendant fails to show, and we do not perceive from the actual sentence ordered, that the circuit court did, in fact, resentence Defendant as of August 8, 1995, but delayed mittimus until October 26, 1998. However, Defendant's probation in Cr. No. 94–2844 was revoked as of October 14, 1999, after Defendant's conviction in Cr. No. 98–2290. With respect to Defendant's revocation, the circuit court stated:

> The court finds that the defendant is not in compliance with the terms and conditions of the previous matter under Criminal No. 94–2844.

Accordingly, motion for revocation of probation is granted based upon the fact that the defendant has inexcusably failed to comply with substantive terms and conditions of that probation, being that he has now been convicted under 98–2290.

Thus, Defendant could not have been sentenced in Cr. No. 94–2844 on October 26, 1998.

 Additionally, Defendant's probation was not automatically revoked upon his incarceration in Cr. No. 98–2290. *See Kami,* 71 Haw. at 616, 801 P.2d at 1208. In *Kami,* this court held that a probationer who is subsequently incarcerated does not automatically receive a revocation of his probation. Instead, "HRS § 706–625(a) mandates that the revocation of a probation sentence requires a hearing." *Id.* Thus, because Defendant's probation was revoked as of October 14, 1999, the circuit court could not sentence Defendant from October 26, 1998. *See id.*

Defendant further argues that, "[b]y sentencing [Defendant] with credit for time served *nunc pro tunc* to October 26, 1998, the [c]i[r]cuit [c]ourt had imposed, *in effect,* a sentence as if the court had, back on August 8, 1995, imposed a five year term of imprisonment but delayed mittimus until October 26, 1998." Defendant fails to explain, and we cannot perceive from the sentence ordered by the court, that the circuit court intended to resentence Defendant from August 8, 1995, but delay mittimus until October 26, 1998. Thus, Defendant's argument fails.[2] Consequently, under any reading of the order, the sentence the circuit court imposed was illegal.

C. *Constitutional Arguments*

 Finally, Defendant argues that his constitutional rights to trial and to equal protection would be violated if the circuit court is precluded from crediting Defendant with time served *nunc pro tunc.* Both constitutional arguments are based on the premise that Defendant was "penalized" because he elected to go to trial on the merits of the

---

**2.** We express no opinion regarding whether the circuit court is authorized to impose such a sen- tence.

1998 offenses, thereby delaying the revocation of his probation, and the consequential credit for time served pending trial. Defendant fails to cite any authority for this proposition, and we have found none. As stated above, a probationer who is subsequently incarcerated does not automatically receive a revocation of his probation. *See Kami*, 71 Haw. at 616, 801 P.2d at 1208. If the Defendant wished to initiate revocation proceedings, at any time, he could have done so. *See* HRS § 706–625 (1993 & Supp.1999).[3] Furthermore, by electing to go to trial, the Defendant was obviously seeking an acquittal, which, if successful, would not have resulted in revocation of his probation. The fact that

he did not succeed at trial does not render the delay in revocation fundamentally unfair.

## IV. *CONCLUSION*

Based on the foregoing, we vacate the circuit court's decision and order of resentencing and remand this case for resentencing consistent with this opinion.

---

**3.** HRS § 706–625(1) provides that "[t]he court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation, reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706–627."